177 So. 133

**OWENS v. AUTO MUT. INDEMNITY CO. et al.**

4 Div. 981.

Supreme Court of Alabama.

Nov. 11, 1937.

Oscar S. Lewis and Emmet S. Thigpen, both of Dothan, for appellant.

Tompkins & Ramsey, of Dothan, for appellees.

THOMAS, Justice.

The suit was by the administrator of the Elmore estate under section 5695 of the Code, and against the Auto Mutual Indemnity Company, a corporation, to recover damages for the death of his intestate.

The defendant's demurrers to the complaint were overruled. Therefore, pleas 1 to 4, inclusive, were filed as answer to counts 1 and 2, respectively, and demurrers thereto were overruled. A nonsuit was taken because of such adverse ruling of the court, and such rulings assigned as error are duly urged in argument by appellant's counsel.

It is decided by this court that where the nonsuit is taken for an adverse ruling as to special pleas, although the general issue is also pleaded, there will be a reversal of the cause if there is error in overruling the demurrer to the special pleas. The reason for this ruling is that such special pleas have neither been proven nor confessed on the record. McKinley v. National Ben. Life Ins. Co., 223 Ala. 545, 137 So. 450.

The statutory bond given under the Motor Carrier Act (Gen.Acts 1932, Ex.

Sess. p. 178) and the indemnity assumed and given under the permit granted followed the car and its driver in the discharge of his duties with the car or truck within the line and scope of that agency. Employers Ins. Co. v. Diggs, 234 Ala. 425, 175 So. 344.

The complaint alleges that defendant G. D. Elmore was operating the truck under permit granted under the statute, and that indemnity was given, and extended by defendant's policy exhibited as a part of the complaint; that the death of plaintiff's intestate was proximately caused by the acts of said Elmore in the negligent operation of that truck; and count 1, charging simple negligence, concludes as follows: " * * * and plaintiff avers that on said 6th of June, 1936, plaintiff's intestate, George Buford Elmore, a minor of to-wit: Seven years of age, was at his home near Dothan, Alabama, at which place the principal garage of the defendant G. D. Elmore was located, the said G. D. Elmore, while engaged in the operation of said truck under the permit issued to him by the Alabama Public Service Commission, which said truck was insured under the policy of insurance hereto attached, so negligently operated said truck as to cause the same to back over plaintiff's intestate, thereby killing him, and plaintiff avers that the death of plaintiff's intestate was proximately caused by the negligence of the said G. D. Elmore in the operation of said truck, as aforesaid."

Count 2 charges a wanton act, that proximately caused the injury, and exhibits the policy of insurance.

It will be noted that the instrument contains the provision as to bodily injuries, as follows:

"1. Bodily Injuries. To pay within the limits specified in Statement 3 (a) all sums which the Assured shall become liable to pay as damages (either direct or in consequence of expenses and/or loss of services) imposed upon him by law for bodily injury, including death resulting at any time therefrom, suffered or alleged to have been suffered by any person or persons as the result of such accidents."

The several pleas, directed to respective counts of the complaint, invoke the common-law rule of disability of a minor to sue the parent for personal injuries inflicted upon him by a parent.

The reason for the rule of the common law is stated to be that the parents' immunity from such suit is to prevent family discord that may arise in a minor's suit for tort. It is declared that such immunity arises from a disability to sue, and not from the lack of a violated duty. The question recurs: Is *this disability absolute? Has the liability of this parent been shifted to the defendant company by virtue of the provisions of the statute?

It is declared in Lloyd Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055, that the "disability of a child to sue the parent for an injury negligently inflicted by the latter upon the former while a minor is not absolute, but is imposed for the protection of family control and harmony, and exists only where the suit, or the prospect of a suit, might disturb the family relations." 20 R.C.L. 631; notes in 71 A.L.R. 1071; 72 A.L.R. 453; 31 A.L.R. 1157, 1161; and 52 A.L.R. 1123. See, also, 64 A.L.R. 296 as to an unemancipated child suing parent for a simple tort. See 46 C.J. p. 1324, as to husband and wife and the right to sue for torts committed by the other. See title in 13 R.C.L. pp. 1396-1397, and authorities.

The relations of husband and wife and parent and child have been treated together as the relationships impose similar duties, liabilities, restrictions, and as affecting the social compact. That is to say, for illustration of the point under consideration, the relations are analogous. And at common law there was no liability on the part of a husband for a tort committed on the person of the wife, just as there was no liability in actions of tort on a parent for personal injuries suffered by an unemancipated minor child, due to the negligence of such parent.

The right of one spouse to maintain action against the other for personal injury has been recently considered in 89 A.L.R. 118, and it is indicated that the great weight of authority is to the effect that the statutes conferring additional rights on married women, and the right to sue separately in their own names for redress of wrongs concerning their separate property and personal security conferred no right on either spouse to sue the other for personal injury, citing a long list of cases in federal and state courts, other than those obtaining in this jurisdiction. It is likewise indicated in Penton v. Penton, 223 Ala. 282, 135 So. 481; Bennett v. Bennett, 224 Ala.

335, 140 So. 378; and Dawson v. Dawson, 224 Ala. 13, 138 So. 414, that in view of the terms of the statutes involved, this court has adopted what is known as the minority rule, and upholds the right of a spouse to sue each other for personal injury.

In the case of Johnson v. Johnson, 201 Ala. 41, 77 So. 335, 337, 6 A.L.R. 1031, it was held that on account of statutory changes, affecting the status of a married woman, a wife may recover against her husband for a personal assault and battery. In this decision Mr. Justice Sayre observed of the common-law rule as to husband and wife, that while much of that law has disappeared under the pressure of enlightened public opinion, "it must still be conceded that it is not for the courts by sudden strokes of policy to make the innovations upon the established law." To like effect was Penton v. Penton, 223 Ala. 282, 135 So. 481, 483. The holding in the Penton Case, supra, was reaffirmed in Bennett v. Bennett, 224 Ala. 335, 140 So. 378.

In Penton v. Penton, supra, it is said of the statute and decisions governing suits between husband and wife: "It is provided by the present statute, section 8268, Code of 1928, that 'the wife must sue alone, at law or in equity, upon all contracts made by or with her, or for the recovery of her separate property, or for injuries to such property, * * * or for all injuries to her person or reputation; and upon all contracts made by her, or engagements into which she enters, and for all torts committed by her, she must be sued as if she were sole.' This statute was held broad enough to include a suit by the wife against her husband in detinue, ex delicto, for recovery of her personal property, Bruce v. Bruce, 95 Ala. 563, 565, 11 So. 197; Strength v. Thornton, 19 Ala.App. 475, 98 So. 206; for recovery of her realty, Cook v. Cook, 125 Ala. 583, 27 So. 918, 82 Am. St.Rep. 264; and for a wilful assault and battery in Johnson v. Johnson, 201 Ala. 41, 77 So. 335, 6 A.L.R. 1031; and Harris v. Harris, 211 Ala. 222, 100 So. 333, assault and battery or willful tort. Hayes v. Hayes, 15 Ala.App. 621, 74 So. 737, was maintained for damages for assault and battery arising in a struggle for the possession of a child of the respective parties."

Mr. William E. McCurdy, in volume 43 Harvard Law Review, pp. 1030-1082, discusses the subject of Torts Between Persons in Domestic Relations; distinguishes the common-law rule as to husband and wife as affecting property, acts affecting the property, acts affecting the person, considerations influencing the courts, the relations of parent and minor child, and acts affecting the person of the minor child under the late decisions adduced, and considerations influencing courts as affecting the right of minor and unemancipated children. It is an exhaustive consideration of the complex domestic relation. The conclusion he announces is that the weight of authority is against the rule that obtains in Alabama as to husband and wife; and that "in case of parent and child the matter has been and still is one of common law." That is to say, authority is in favor of recognition of a cause of action in respect to property injuries, and a denial thereof in respect to personal injuries.

The fact that the father is protected by insurance is held in other jurisdictions not sufficient to change the result, this rule being declared in Lund v. Olson, 183 Minn. 515, 237 N.W. 188; Belleson v. Skilbeck, 185 Minn. 537, 242 N.W. 1.

Has the statute in this state changed the common-law rule? Section 5686 of the Code provides that infants without guardians must sue by the next friend and defend by guardian appointed by the court. Section 5695, relative to suits for injuries causing death of a minor, provides: "When the death of a minor child is caused by the wrongful act, or omission, or negligence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in cases mentioned in the preceding section; or if the father and mother are both dead, or if they decline to bring the action or fail to do so within six months from the death of the minor, the personal representative of such minor may sue, and in any case shall recover such damages as the jury may assess."

The General Acts of Alabama, Extra Session 1932, pp. 178, 185, provide that an insurance company may assume the liability. Section 26, article 7, provides as follows: "No permit shall be issued until there has been filed and accepted by the Judge of Probate to whom application is made, a good and sufficient indemnity bond or insurance policy (upon which the premium has been paid in advance for a period of not less than 30 days) issued by some surety or insurance company, or other insurance carrier duly authorized to transact business as such within this State, *for the protection of the public* (other than the pas-

sengers of, or the shippers of freight by, such carrier) *in the collection of damages for which the carrier may be liable by reason of the operation of any motor vehicle* subject to the provisions of this Act. It shall be the duty of the Commission to prescribe by general order the terms, conditions and provisions of such bonds, except, however, the penal sum or maximum amount of each such bond shall be $5,000.00 for the death of or injury to any one person, and $10,000.00 for the damages caused by any one accident or occurrence." The terms of the liability assumed by the insurance company are to "pay as damages * * * imposed upon him (we interpolate, "the assured") by law for bodily injury."

Does the statute, section 5695 of the Code (as to suit by a personal representative to maintain an action and recover such damages as the jury may assess for injuries causing death of a minor child), even though it does not contain that portion of section 5696 of the Code providing *"if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death,"* give the right of action to such minor child? And since section 5695 of the Code does not contain the exception "if the testator or intestate could have maintained an action for such wrongful act," etc., does it change the rule of the common law and give the right to the personal representative to sue for the tort committed by the parent on the child?

We are of opinion that such was not the intent of the statute in question, and we hold that in the absence of a specific statute to the contrary, the rule in question, so long prevailing, would prevent an unemancipated minor child from recovering for an injury in tort against a parent.

What has been said will apply to the ruling on pleas directed to the wanton count.

It follows that under the terms of the indemnity policy set out, the trial court was not in error in overruling demurrers directed to the pleas set up as answer to the simple negligence and wanton counts.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.